### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SHEILA Y. JOHNSON | : |
| Plaintiff, | : |
| v. | : C.A. No. 12-653-GMS |
| STATE OF DELAWARE/ DEPARTMENT OF LABOR | : |
| Defendant. | : |

### MEMORANDUM

**I. INTRODUCTION**

The court now considers defendant's motion to dismiss plaintiff's complaint. For the reasons set forth, defendant's motion shall be granted.

**II. BACKGROUND**

Plaintiff, Sheila Y. Johnson, was employed by defendant, State of Delaware, Department of Labor, from November 2003 until September 2010. (D.I. 2 at 2.) Plaintiff alleges she was terminated based on her race (African American) and defendant's refusal to accommodate her health needs. (Id. at 2-3.) Her claims are based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. as amended, ("Title VII") and the Americans with Disabilities Act of 1990 ("ADA"), and request relief in the form of lost wages and punitive damages. (Id. at 1; D.I. 18 at 1-2.)[1]

Plaintiff filed her administrative claim with the Equal Employment Opportunity Commission ("EEOC") in June 2011. (D.I. 2 at 2.) On February 27, 2012, the EEOC

---

[1] Although plaintiff's complaint consists of a form for filing Title VII claims, plaintiff's specific allegations are consistent with an ADA claim.

issued her a right-to-sue letter. (*Id.* at 2, 4.) On May 24, 2012, plaintiff filed this action *pro se*. (*Id.* at 1.) On April 9, 2013, defendant filed its motion to dismiss pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6). (D.I. 16.)

Plaintiff's complaint alleges: "Wrongful termination - failure to accommodate obvious disabilities . . . failure to establish performance plan - failure to provide/allow union representation - discrimination, retaliation for protected activity, providing inadequate training, etc. - failure to acknowledge disabilities." (D.I. 2 at 2). The complaint also alleges plaintiff was discriminated against due to her race and color. (*Id.* at 3.) In her response to defendant's motion to dismiss, plaintiff reiterates she was wrongfully terminated because of her race. (D.I. 18 at 1.) She claims defendant advised her termination was because she could not perform the essential functions of an Operations Support Specialist. (*Id.* at 1-2.) Plaintiff states she was employed in the same capacity since November 2003 and always received satisfactory or above satisfactory reviews. (*Id.* at 2.) From May to August 2009, plaintiff asserts she had no indication that her work performance was inadequate. (*Id.*) Plaintiff further alleges defendant failed to provide the necessary accommodations for her conditions of stress, diabetes, and prior open heart surgery.[2] (*Id.* at 1.) She also contends other employees, including one who is also African American, returned from disability leave and unlike plaintiff, were not placed on probation. (*Id.*)

Defendant argues plaintiff's complaint should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim upon which

---

[2] Plaintiff claims the residual effects from the conditions required three emergency room visits between May and September 2009. (D.I. 18 at 1.)

2

relief can be granted under Rule 12(b)(6). (D.I. 16 at 1.) Regarding plaintiff's ADA claim, defendant contends the Eleventh Amendment of the United States Constitution and state sovereign immunity, bar federal courts from hearing lawsuits against a state in the absence of abrogation or consent. (D.I. 17 at 2.) Defendant relies on *Edelman v. Jordan*, 415 U.S. 651 (1974), where the Supreme Court held that in the absence of consent, a state is "immune from suits brought in federal court by her own citizens as well as by citizens of another State," and *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996), where the Court determined that only with a clear indication of Congress' intent, will the states' immunity be waived. (D.I. 17 at 2-3, quoting *Edelman*, 415 U.S. at 662-63.) Defendant maintains the complaint fails to allege any conduct in violation of the Fourteenth Amendment which is necessary to formally revoke state sovereign immunity. (*Id.* at 3.) Since Delaware's sovereign immunity has not been abrogated, defendant asserts this court is without subject matter jurisdiction under Rule 12(b)(1), and requests plaintiff's ADA claim be dismissed with prejudice. (*Id.*; D.I. 19 at 1.)

Defendant also contends plaintiff's ADA and Title VII claims should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim. (D.I. 17 at 4.) It argues the complaint is merely "labels and conclusory allegations," with minimal, if any, facts. (D.I. 19 at 1.) Defendant maintains plaintiff's racial discrimination allegations are unsubstantiated because the bulk of her complaint focuses on the alleged failure to accommodate her disability. (*Id.* at 2.) Defendant argues plaintiff's complaint undermines her Title VII claim because her single comparator, who is also African American, was treated preferably following disability leave. (*Id.*) Defendant, therefore,

3

requests that plaintiff's Title VII and ADA claims be dismissed under Rule 12(b)(6). (*Id.*)

## III. STANDARD OF REVIEW

### 1. Rule 12(b)(1) Standard

When jurisdiction is challenged, the party asserting subject matter jurisdiction has the burden of proving its existence. *See Carpet Group Int'l v. Oriental Rug Importers Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000). Under FED. R. CIV. P. 12(b)(1), the court's jurisdiction may be challenged either facially, that is, based on the legal sufficiency of the claim, or factually, based on the sufficiency of jurisdictional facts. 2 MOORE'S FEDERAL PRACTICE § 12.30[4] (3d ed. 1997). Here, defendant challenges the court's jurisdiction facially. Where there is a facial attack on jurisdiction, the court must accept as true the allegations contained in the complaint. Dismissal for a facial challenge to jurisdiction is "proper only when the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous.'" *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408-09 (3d Cir. 1991) (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

### 2. Rule 12(b)(6) Standard

*Pro se* complaints, "however inartfully pleaded," are held to less stringent standards than formal pleadings drafted by lawyers, and the court "has an obligation to construe the complaint liberally." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Gadson v. City of Wilmington Fire Dept.*, 478 F. Supp. 2d 635, 639 (D. Del. 2007). *Pro se* complaints may be dismissed for failure to state a claim if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to

4

relief." *Hamilton v. Civigenics*, No. C.A. 03-826-GMS, 2005 WL 418023, at *2 (D. Del. Feb. 22, 2005) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

FED. R. CIV. P. 12(b)(6) governs a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. In conjunction with Rule 8(a)(2), it is required that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." That standard "does not require 'detailed factual allegations,' but . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The purpose of a motion under Rule 12(b)(6) is to test the sufficiency of the complaint, not to resolve disputed facts or decide the merits of the case. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1997). "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotations and citations omitted); *see also Twombly*, 550 U.S. 544, 563 n.8 (2007) (stating "[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder."). A motion to dismiss may be granted only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (citing *Burlington*, 114 F.3d at 1420).

To survive a motion to dismiss under Rule 12(b)(6), however, the factual allegations must be sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555; *see also Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007). A plaintiff is obliged "to provide the 'grounds' of his 'entitle[ment] to relief'" beyond "labels and conclusions." *Twombly*, 550 U.S. at 555. Heightened fact pleading is not required: rather "enough facts to state a claim to relief that is plausible on its face" must be alleged. *Id.* at 570. The plausibility standard does not rise to a "probability requirement," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949. While the court draws all reasonable factual inferences in the light most favorable to a plaintiff, it rejects unsupported allegations, "bald assertions," and "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted); *see also Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) (citations omitted) (rejecting "unsupported conclusions and unwarranted inferences"); *see generally Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) ("It is not . . . proper to assume [plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged."). Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949; *see also Twombly*, 550 U.S. at 555 (a court is "not bound to accept as true a legal conclusion couched as a factual allegation"). "Only a complaint that states a plausible

6

claim for relief survives a motion to dismiss," which is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. Well-pled facts which only infer the "mere possibility of misconduct," do not show that "'the pleader is entitled to relief,'" under Rule 8(a)(2). *Id*. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id*.

## IV. DISCUSSION

### 1. Plaintiff's ADA Claim - Lack of Subject Matter Jurisdiction

States are generally immune from lawsuits by private parties in federal courts as the Eleventh Amendment of the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

*See* U.S. CONST. amend. XI.

Although this matter involves a suit brought by a citizen against her own state, the Eleventh Amendment has been interpreted to prohibit such actions. *See Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 120 (2000), (stating "for over a century now, we have made clear that the Constitution does not provide for federal jurisdiction over suits against non-consenting States"). A state's Eleventh Amendment immunity, however, will be lost if: "(1) it has waived its immunity, or (2) Congress has abrogated a state's immunity pursuant to a valid exercise of its power." *Lieberman v. Delaware*, No. C.A. 96-523-GMS, 2001 WL 1000936, at *2 (D. Del. Aug. 30, 2001), *aff'd*, No. 01-350, 2003 WL 21658273 (3d Cir. July 7, 2003).

7

Although plaintiff's discrimination claim appears to correspond more with an analysis under Title I of the ADA, due to the circumstances of her termination and her failure to specify under which Title she sued, the court will analyze both Title I and II for Eleventh Amendment purposes.

For claims brought under Title I of the ADA,[3] the rule is undisputed. The Supreme Court in *Board of Trustees of University of Alabama v. Garrett* expressly held that claims for money damages brought by individuals against a state were barred by the Eleventh Amendment. 121 S. Ct. 955, 960 (2001); *see also Hohman v. State of Delaware, Dept. of Corrections*, No. 01-562-GMS, 2001 WL 1593222, at *4 (D. Del. Dec. 11, 2001). Concerning claims brought under Title II of the ADA,[4] however, the Court explicitly declined to resolve the issue. *Garrett*, 121 S. Ct. 955, 960 n.1 (2001) (stating "[w]e are not disposed to decide the constitutional issue whether Title II, which has somewhat different remedial provisions from Title I, is appropriate legislation under § 5 of the Fourteenth Amendment when the parties have not favored us with briefing on the statutory question."); *Lieberman*, 2001 WL 1000936, at *3.

For Title II claims, the court first determines whether Delaware has waived its

---

[3] *See Lieberman*, 2001 WL 1000936, at *6 n.3 (quoting Title I of the ADA: "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112).

[4] *Lieberman*, 2001 WL 1000936, at *6 n.4 (quoting Title II of the ADA: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132).

8

Eleventh Amendment immunity. Article I, § 9 of Delaware's constitution provides: "Suits may be brought against the State, according to such regulations as shall be made by law." *Ospina v. Dept. of Corrections, State of DE*, 749 F. Supp. 572, 578 (D. Del. 1990) (quoting Del. Const. art. I, § 9). This provision has been interpreted as protecting the state against inadvertent waiver of its immunity. *Janowski v. Division of State Police, Dept. of Safety and Homeland Sec., State of Delaware*, 981 A.2d 1166, 1169 (Del. 2009). This court has recognized "a waiver will be found only where it has been stated 'by the most express language or by such overwhelming implications from the text as will leave room for any other reasonable construction.'" *Space Age Products, Inc. v. Gilliam*, 488 F. Supp. 775, 780 (D. Del. 1980) (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171 (1909)). Here, neither Delaware's constitution nor code expressly waive the state's sovereign immunity. *Hohman*, 2001 WL 1593222, at *3.

In determining whether Congress has abrogated state immunity under the Eleventh Amendment, a "simple but stringent test" applies. *Lavia v. Pennsylvania, Dept. of Corrections*, 224 F.3d 190, 196 (3d Cir. 2000) (citing *Dellmuth v. Muth*, 491 U.S. 223, 228 (1989)). In this two-part test, the court first considers "whether Congress has 'unequivocally expresse[d] its intent to abrogate the immunity;' and second, whether Congress has acted 'pursuant to a valid exercise of power,'" in abrogating immunity. *Id.* (citing *Seminole Tribe*, 517 U.S. at 55).

In regards to the ADA, Congress has fulfilled the first part of the test by expressly stating its intent to abrogate the states' Eleventh Amendment immunity through § 12202

9

of the ADA in providing: "[a] State shall not be immune under the [E]leventh [A]mendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202.

For the second part of the test, in determining whether Congress has acted pursuant to a valid exercise of power in abrogating state immunity, the court initially identifies the constitutional right at issue. It then decides whether Congress identified a history and pattern of unconstitutional discrimination against the disabled by the state in violation of the Fourteenth Amendment's substantive provisions, and whether the legislative scheme is tailored to remedy such conduct. *Lieberman*, 2001 WL 1000936, at *3 (citing *Garrett*, 121 S. Ct. 955, 963-64).

In identifying the constitutional right at issue, the Supreme Court in *Garrett* reasoned:

> States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions towards such individuals are rational. . . . If special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause.

*Lieberman*, 2001 WL 1000936, at *3 (quoting *Garrett*, 121 S. Ct. at 964).

In the context of disability discrimination, the Third Circuit has found:

> A State's decision to deny employment based upon a consideration of an individual's disability as a generalization of their other qualities, abilities, or characteristics will not offend the Equal Protection Clause and its rational basis test, provided that it is rationally related to a legitimate state interest and is not the result of purposeful discrimination.

*Lavia*, 224 F.3d at 200 (citing *Washington v. Davis*, 426 U.S. 229, 239-40 (1976)).

After identifying the constitutional right at issue, the court determines whether Congress has recognized a history and pattern of discrimination by states in violation of the Fourteenth Amendment. *See Jamison v. Delaware*, 340 F. Supp. 2d 514, 517 (D. Del. 2004). Although Congress concluded in the ADA that "'historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination continue to be a serious and pervasive social problem,'" the Supreme Court in *Garrett* expressly held the legislative record of the ADA failed to identify a pattern of irrational state discrimination in employment against the disabled. *Id.* (quoting 42 U.S.C. § 12101(a)(2) (2004)); *Garrett*, 121 S. Ct. at 965. Furthermore, "even if Congress had identified a pattern of discrimination by the states, the ADA is not congruent and proportional to the targeted violation," and the ADA "cannot be understood to prevent unconstitutional behavior." *Jamison*, 340 F. Supp. 2d at 518. Courts within the Third Circuit, therefore, maintain Congress has not validly abrogated Delaware's Eleventh Amendment immunity concerning Title II claims under the ADA. *See Lieberman*, 2001 WL 1000936, at *5.

In the instant matter, the court finds there is a lack of subject matter jurisdiction as to plaintiff's ADA claim. Defendant has not waived its immunity under the Eleventh Amendment and Congress' intent to abrogate state immunity, through the language of the ADA, exceeded its valid power under § 5 of the Fourteenth Amendment. Plaintiff, bearing the burden of proving subject matter jurisdiction in response to the motion to dismiss, failed to make an appropriate showing that jurisdiction was proper. Therefore,

pursuant to Rule 12(b)(1), defendant's motion to dismiss the ADA claim is granted.[5]

### 2. Plaintiff's Title VII Claim - Failure to State a Claim

Title VII of the Civil Rights Act of 1964 makes it illegal for an employer: "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a). In order to state a claim of unlawful discrimination upon which relief can be granted, a plaintiff must allege: she is a member of a protected class; she suffered an adverse employment action; and non-members of the protected class were treated more favorably. *Reeves v. Radiology Assocs., Inc.*, No. C.A. 05-007-JJF, 2006 WL 1173900, at *2 (D. Del. May 2, 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)); *see also Blue v. Def. Logistics Agency*, 181 F. App'x 272, 273 (3d Cir. 2006).

To assert a claim of employment discrimination under Title VII, the complaint "need not contain specific facts establishing a prima facie case of discrimination" under the required elements, "but it must contain at least a short and plain statement of the claim showing that the pleader is entitled to relief." *Watson v. Dept. of Servs. for Children, Youths, and Their Families Delaware*, 932 F. Supp. 2d 615, 622 (D. Del. 2013) (citing *Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002)). The ordinary rules for assessing the sufficiency of a complaint, therefore, apply. *Id.*; *see also Scheuer v.*

---

[5] In light of these findings, the court need not address plaintiff's claim of lack of accommodation and whether her ADA claim meets the requirements of Rule 12(b)(6).

12

*Rhodes*, 416 U.S. 232, 236 (1974). This court, however, has held a plaintiff is unable to successfully allege racial discrimination absent a showing of specific facts. *See Simpson v. Potter*, 589 F. Supp. 2d 424, 426-29 (D. Del. 2008).

In the instant matter, plaintiff failed to meet the requirements of Rule 12(b)(6) regarding her Title VII claim. In her complaint, where the form provides "[d]efendant's conduct is discriminatory with respect to the following," plaintiff checked the boxes indicating: "(A) Plaintiff's race; and (B) Plaintiff's color." (D.I. 2 at 3.) She failed to specify or note any racially-motivated activity conducted by defendant. In her response to defendant's motion to dismiss, she included minimal elaboration in stating Title VII was violated "because of . . . race (black) and that I was in fact evaluated on [a] basis not placed on other employees specifically Arlene Brown (black, light skinned) who returned after disability and was not placed on probation as I was . . . ." (D.I. 18 at 1.) This information fails to show any fact of racial discrimination because plaintiff's only comparator alleged to be treated preferably was also an African American woman returning from medical leave. Plaintiff's allegations, therefore, rise only to the level of bald assertions and legal conclusions, which fail to support the claim and any entitlement to relief. Construing her *pro se* complaint as liberally as possible, this court cannot find that plaintiff sufficiently pled a claim where relief can be granted. Defendant's motion to dismiss plaintiff's Title VII claim pursuant to Rule 12(b)(6) is granted.

## V.     CONCLUSION

For the aforementioned reasons, the court grants the defendant's motion to

dismiss both plaintiff's ADA and Title VII claims.

Dated: August 1, 2014

_____
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

SHEILA Y. JOHNSON :
:
Plaintiff, :
:
v. : C.A. No. 12-653-GMS
:
STATE OF DELAWARE/ :
DEPARTMENT OF LABOR :
:
Defendant. :

## JUDGMENT ORDER

At Wilmington, this 1st day of August 2014,

Consistent with the Memorandum issued as of this date, IT IS ORDERED AND ADJUDGED that defendant's motion to dismiss (D.I. 16) is GRANTED.

UNITED STATES DISTRICT JUDGE